STATE OF NORTH CAROLINA ex rel. UTILITIES COMMISSION
AND CAROLINA POWER AND LIGHT COMPANY, APPLICANT v.
RUFUS L. EDMISTEN, ATTORNEY GENERAL; EXECUTIVE
AGENCIES OF UNITED STATES OF AMERICA; THE NORTH
CAROLINA TEXTILE MANUFACTURERS ASSOCIATION, INC.;
AND BALL CORPORATION, INTERVENORS, PROTESTANTS

No. 47

(Filed 21 December 1976)

1. Utilities Commission § 6— change in public utility rates

The consumer has no vested right in existing public utility rates,
and the Utilities Commission may change the rates as circumstances
dictate.

2. Utilities Commission § 6— application of same rates to different cus-
tomers

Where substantial differences in services or conditions do exist,
unreasonable application of the same rates to different public utility
customers may be discriminatory and thus improper.

3. Utilities Commission § 6— burden of showing rate discrimination

The burden of showing the impropriety of rates established by
the Utilities Commission lies with the party alleging such discrimina-
tion.

4. Utilities Commission § 6— utility rates — presumption of reasonable-
ness

The rates fixed by the Utilities Commission are deemed just
and reasonable; however, this does not preclude an appellant from
showing on appeal, if it can, that the Commission's order is not sup-
ported by competent, material and substantial evidence.

5. Electricity § 3; Utilities Commission § 6— elimination of customer
classifications

There was sufficient competent evidence to support an order of
the Utilities Commission eliminating textile mill, high load factor and
military service schedules for electricity and placing customers for-
merly in those schedules in a general service classification.

6. Utilities Commission § 9— electric power rates — disproportionate rates
of return for different classifications — question not reviewable

Contention that the Utilities Commission ered in entering an or-
der allowing rates of return for electric service from a low of 2.702
percent (rural farm) to a high of 13.276 percent (municipal pump-
ing) in that they are unreasonably disproportionate to the average
rate of return of 10.115 percent will not be reviewed by the appellate
court where neither of the users cited to show the two extremes is a
party to the appeal and appellant concedes it is paying only its fair
share.

7. **Electricity § 3; Utilities Commission § 6— cost-of-service study — data from another state**

The Utilities Commission did not err in relying on a power company's cost-of-service study based on system-wide retail data in both North Carolina and South Carolina where there was ample evidence that data underlying the system-wide cost-of-service study was representative of the company's operating conditions in North Carolina.

APPEAL by Executive Agencies of United States of America from decision of the Court of Appeals, 29 N.C. App. 428, 225 S.E. 2d 101 (1976), affirming order of the Utilities Commission entered 6 January 1975 in Docket E-2, Sub 229.

Carolina Power and Light Company (CP&L) commenced this general rate case on 29 October 1973 by filing with the North Carolina Utilities Commission (Commission) an application for authority to increase its retail rates for electricity sold in North Carolina by approximately 21 percent, effective 1 December 1973. The proposed rate increases were not across-the-board but varied among the various customer classes. The application stated that the rates for many large users were to be increased more than the average, due in large part to the distribution of higher fuel costs. This application also included CP&L's request for an 11 percent interim rate increase, and the Commission authorized an interim increase of 5.94 percent, after notice and public hearing, by order dated 25 January 1974. CP&L moved for permission to place into effect the remainder of the requested 11 percent interim increase and, after notice and public hearing, the Commission, on 1 April 1974, authorized the additional interim increase of 5.06 percent to be placed into effect subject to refund.

Acting under the provisions of G.S. 62-135 CP&L gave notice on 10 May 1974 of its intention to place into effect rate increases up to 20 percent, and on 16 May 1974 the Commission approved CP&L's undertaking for a refund, as provided by G.S. 62-135(c). The 20 percent increase was placed into effect by CP&L effective 1 June 1974.

In addition to applying for an increase in rates, CP&L proposed in its 29 October 1973 application a change in its rate structure to eliminate certain previously established customer classification schedules. Among the schedules it proposed to eliminate were the Textile Mill Schedule (TM), the High Load Factor Schedule (HLF), and the Military Service Schedule (MS).

Customers formerly in these schedules were placed in a general service classification designated Schedule G-3.

After public hearings were held and numerous witnesses heard, and after briefs of the parties were filed, the Commission entered a final order on 6 January 1975 containing its findings of fact and conclusions of law, approving the increased rates sought by CP&L. This order also approved the rate schedules essentially as sought by CP&L with only slight downward adjustments in the schedules affecting low-usage residential customers.

The elimination of the TM, the HLF, and the MS classifications resulted in rate increases somewhat greater than the 21 percent overall increase for customers who were formerly in those classifications. The intervenors, North Carolina Textile Manufacturers Association, Ball Corporation, and Executive Agencies of United States of America, previously classified in the TM, HLF, and MS schedules respectively, took exception to the elimination of those classifications and appealed to the Court of Appeals contending the Commission had committed reversible error in that portion of its 6 January 1975 order which approved the elimination of those customer classifications. The Court of Appeals affirmed the order of the Commission with Martin, J., dissenting. From that decision, *only* Executive Agencies of United States of America appealed to the Supreme Court. Errors assigned will be discussed in the opinion.

*Edward B. Hipp, General Counsel, and Wilson B. Partin, Jr., Assistant Commission Attorney, for North Carolina Utilities Commission, plaintiff appellee.*

*R. C. Howison, Jr. and William E. Graham, Jr. for Carolina Power & Light Company, plaintiff appellee.*

*Thomas P. McNamara, United States Attorney, by Christine A. Witcover, Assistant United States Attorney; R. C. Hudson for Executive Agencies of the United States of America, defendant appellant.*

HUSKINS, Justice.

In its first assignment of error appellant challenges the decision of the Commission to consolidate the Military Service classification (MS) with other classes into the new G-3 schedule.

Appellant concedes, and we agree, that it is not presently hurt by the reclassification with respect to the increased rates which it will be required to pay. As noted, the Utilities Commission has adopted a reclassification program designed (1) to bring customer rates into closer alignment with costs of providing service and (2) to simplify existing schedules. The Commission's recent cost-of-service analysis indicates that, under the current rate structure, some service classes are paying a higher proportion of the cost of service than other classes. Thus there is an inter-class cross subsidation resulting in price discrimination. Although this effect originated in historically sound policy, considerable testimony before the Commission suggests that the underlying reasons are no longer compelling. Thus the Commission sought to correct these inequities by more closely aligning the rate of return from each class with that of the system average.

It is true that in moving toward this goal the rates of some groups, including appellant, were raised more, proportionately, than others. The net effect of this increase, however, was to bring CP&L's rate of return for services furnished appellant more in line with that of the system average, in this case 10.215 percent as compared to an overall rate of return of 10.115 percent. As one witness noted, "[y]ou can't make rates much closer than that." Clearly, appellant is not presently aggrieved by the rate schedule as presently applied.

Appellant, however, contends that it will likely be aggrieved in the future by virtue of its joinder with the Textile Mill class (TM-1) and the High Load Factor class (HLF) into the new G-3 classification. It argues that it should not be combined with the other groups because it has service or use characteristics which are incompatible with those groups. For example, it has a different average load factor, minimum demand, and service voltage than the other groups. Appellant further contends that because of these different use characteristics it may, *in the future*, bear a disproportionate share of the costs within the G-3 classification. That is, it may be aggrieved by intra-class subsidation should it be combined into a rate class with dissimilar groups.

Discussion of this contention requires us first to outline the legal framework within which the Commission ordered the reclassification.

**[1]** The Utilities Commission is vested generally with the power to regulate utilities and their rates. G.S. 62-2. A rate is defined as "every compensation, charge, fare, tariff, schedule, toll, rental and classification, or any of them, demanded, observed, charged or collected by any public utility, for any service, product or commodity offered by it to the public, and any rules, regulations, practices or contracts affecting any such compensation, charge, fare, tariff, schedule, toll, rental or classification." G.S. 62-3. All rates must be just and reasonable. G.S. 62-130 and G.S. 62-131. The consumer has no vested right in existing rates, *Utilities Commission v. Municipal Corporations,* 243 N.C. 193, 90 S.E. 2d 519 (1955), and the Commission may change the rates as circumstances dictate. G.S. 62-130.

**[2]** This authority is not unbridled. "There must be substantial differences in service or conditions to justify difference in rates. There must be no unreasonable discrimination between those receiving the same kind and degree of service." *Utilities Commission v. Mead Corp.,* 238 N.C. 451, 78 S.E. 2d 290 (1953). *See Utilities Commission v. Municipal Corporations, supra.* It follows that where substantial differences in services or conditions *do exist,* unreasonable application of the *same* rates may be discriminatory and thus improper.

**[3, 4]** The burden of showing the impropriety of rates established by the Commission lies with the party alleging such discrimination. *See Utilities Commission v. Light Co.* and *Utilities Commission v. Carolinas Committee,* 250 N.C. 421, 109 S.E. 2d 253 (1959). The rates fixed by the Commission are deemed just and reasonable. G.S. 62-132. The Legislature has reiterated this determination by providing that upon "any appeal, the rates fixed or any rule, regulation, finding, determination, or order made by the Commission under the provisions of this Chapter shall be prima facie just and reasonable." G.S. 62-94(e). *Utilities Commission v. Telephone Co.,* 266 N.C. 450, 146 S.E. 2d 487 (1966); *Utilities Commission v. Coach Co.* and *Utilities Commission v. Greyhound Corp.,* 260 N.C. 43, 132 S.E. 2d 249 (1963); *Utilities Commission v. R. R.,* 249 N.C. 477, 106 S.E. 2d 681 (1959); *Utilities Commission v. Casey,* 245 N.C. 297, 96 S.E. 2d 8 (1957).

This does not preclude appellant from showing on appeal, if it can, that the order is not supported by competent, material and substantial evidence. *Utilities Commission v. Coach Co.,*

261 N.C. 384, 134 S.E. 2d 689 (1964); *Utilities Commission v. R. R.*, 238 N.C. 701, 78 S.E. 2d 780 (1953). After careful review of this record, however, we hold that the appellant has not carried this burden.

It is apparent that in devising the rate structure the Commission was faced with conflicting goals. One goal was the *elimination of all cross subsidation.* It is likely that under the combined class arrangement, as adopted by the Commission, some intra-class cross subsidation may occur. In a rate-making scheme based on *cost of service to classes,* the fewer classes there are, the more likely it is that such cross subsidation will arise. Conversely, a large number of classes reduces the likelihood. Carried to an extreme, costs will be most accurately allocated where each customer is a class by himself and his rates are based on the cost of service to him. By this method a customer living miles from a power station would pay more than a resident living next to a transmission facility. Such a scheme is patently unworkable at the present time. It conflicts with a second goal of rate-making: *simplification of the rate structure.* Several witnesses testified to the need for simplification. It was noted that North Carolina has considerably more rate classes than most other areas. In fact, the rate experts recommended that the schedule be further reduced to only three classes.

**[5]** Thus it is apparent that a balance must be struck between the two objectives. This the Commission did in its order of 6 January 1975. We recognize that appellant has lodged strong and cogent objections to the resolution adopted by the Commission, but it is not the function of this Court to select among permissible determinations. That we might have weighed the factors differently is not sufficient to allow us to reverse or modify the order. *Utilities Commission v. Telephone Co.,* 281 N.C. 318, 189 S.E. 2d 705 (1972). There must be a showing by appellant that the evidence on which the order is based is insufficient to support that order. G.S. 62-94(b)(5). Appellant has made no such showing. Hence, this assignment is overruled.

**[6]** In its second assignment of error appellant contends that the Commission erred in entering an order allowing rates of return from a low of 2.702 percent (rural farm, RF) to a high of 13.276 percent (municipal pumping, MP-1) in that they are unreasonably disproportionate to the average rate of return, *i.e.,* 10.115 percent. Neither of the users cited to show the two

extremes are parties to this appeal. CP&L's rate of return from appellant under the new schedule would be 10.215 percent which is, as noted at the outset, reasonably close to the average rate. It is clear that appellant is not prejudiced by these alleged unreasonable variations. It is paying only its fair share, a fact which is conceded. Therefore, we do not review this assignment.

[7]  Finally, appellant contends that the Cost-of-Service-Study upon which the Commission based its order was incompetent. The thrust of appellant's argument is that the study by CP&L was based on system-wide retail data in North and South Carolina when it should have been based solely on data compiled within the North Carolina jurisdictional area to which the Commission's schedule will apply.

It is true that if the system-wide study significantly varied from results which would be produced by a study based solely on North Carolina data, it would be incompetent. North Carolina rates may not be structured by external system usage. *See Corporation Com. v. Mfg. Co.*, 185 N.C. 17, 116 S.E. 178 (1923). Such action is outside the intended scope of the Commission's authority. G.S. 62-2.

On the record presented here, however, there is ample evidence that data underlying the system-wide cost-of-service studies was representative of the company's operating conditions in North Carolina. Among other factors, we note that 82 percent of all retail system customers are located in North Carolina and that 81 percent of all retail KWHs are sold to customers in this state. With regard to the particular interests of the appellant, we note that seven of CP&L's eight military customers system-wide are located in North Carolina. Based on this and other testimony, we find that the Commission's reliance on data supplied by the contested study was reasonable and that the resulting rates were structured from data representative of CP&L's intrastate experience. Accordingly, this contention is without merit.

Careful review of the entire record compels the conclusion that there is competent evidence to support that portion of the Commission's order of 6 January 1975 which approved the elimination of the Textile Mill Schedule (TM), the High Load Factor Schedule (HLF), and the Military Service Schedule (MS), and the moving of customers in the eliminated schedules into a general service classification, designated Schedule G-3.

The well-reasoned decision of the Court of Appeals with respect to the questions raised on appeal to this Court by Executive Agencies of United States of America must therefore be upheld.

Affirmed.