STATE OF NORTH CAROLINA, EX REL. UTILITIES COMMISSION; DUKE
    POWER COMPANY (APPLICANT); NORTH CAROLINA PUBLIC INTEREST
    RESEARCH GROUP; NORTH CAROLINA TEXTILE MANUFACTURERS
    ASSOCIATION; PEOPLES ALLIANCE; AND PUBLIC STAFF, NORTH
    CAROLINA UTILITIES COMMISSION v. CONSERVATION COUNCIL OF
    NORTH CAROLINA; GREAT LAKES CARBON CORPORATION; AND KUD-
    ZU ALLIANCE

No. 8210UC854

(Filed 4 October 1983)

1. **Utilities Commission § 34— power company rates—allowance for funds used during construction**

    The Utilities Commission did not err by including in the rate base of a
    power company an allowance for funds used during construction which arose
    after 1 July 1979 but accrued on construction work in process occurring prior
    to that date. G.S. 62-133(b)(1).

2. **Utilities Commission § 34— power company rates—construction work in progress—later abandonment of project**

    The Utilities Commission's determination that construction work was in
    progress at a nuclear power plant and that the costs associated with the
    nuclear plant should be included as construction work in progress in the power
    company's rate base was supported by the evidence before the Commission,
    notwithstanding the power company abandoned the nuclear plant project dur-
    ing the pendency of the present rate case on appeal. G.S. 62-94(b).

3. **Utilities Commission § 44— power company rates—extending hearing for additional evidence**

    The Utilities Commission did not abuse its discretion in extending the
    hearing of a general rate case for a power company to allow evidence on the
    "used and useful" status of a nuclear generating unit.

4. **Utilities Commission § 32— power company rates—nuclear plant as "used and useful"—accounting adjustments**

    A finding by the Utilities Commission that a nuclear generating plant was
    "used and useful" to a power company was supported by evidence that it was
    operating well at 50% of its rated capacity and that the power company ex-
    pected to increase capacity without problems or delays. Furthermore, the in-
    clusion of the nuclear unit in the power company's rate base, was not done
    without necessary accounting adjustments where evidence at the hearing in-
    dicated that the nuclear unit would be producing less expensive power as a
    substitute for power from generating plants with higher fuel costs, the Com-
    mission accounted for this by reducing the power company's base fuel cost for
    fuel savings related to operation of the nuclear unit, and no adjustment in
    revenues was needed because the power company was not going to sell addi-
    tional power that would bring in extra revenues.

5. **Utilities Commission § 34— power company rates—reasonableness of construction work in process**

    G.S. 62-133(b)(1) did not require the Utilities Commission to make a finding on the reasonableness of including construction work in process in the rate base of a power company but required the Commission to include construction work in process in the rate base once it determined that such expenditures were reasonable and prudent. Furthermore, findings as to the reasonableness of construction work in process were not inadequate because they failed separately to address specific expenditures for each plant, how much each plant will ultimately cost, when it will be needed, and when it will be completed.

6. **Utilities Commission § 38— power company rates—fuel costs from fuel adjustment proceeding—failure to find reasonableness of costs**

    While it was proper for the Utilities Commission to use fuel costs of a power company from a fuel adjustment proceeding under G.S. 62-134(e), adjusted for fuel savings due to a new nuclear unit, as the basis for fuel costs in a general rate case, the Commission erred in failing to consider and rule upon the reasonableness of the fuel costs.

    Chief Judge VAUGHN concurring in part and dissenting in part.

APPEAL by intervenors Conservation Council of North Carolina, Great Lakes Carbon Corporation, and Kudzu Alliance from an order entered by the North Carolina Utilities Commission on 11 February 1982. Heard in the Court of Appeals 6 June 1983.

Applicant-appellee Duke Power Company (hereinafter Duke) filed an application for rate increases on 18 March 1981 with the North Carolina Utilities Commission (hereinafter Commission). Duke requested about a 19.7% increase in revenues, amounting to approximately $211,000,000. The Commission ordered that the application be treated as a general rate case. Public hearings were conducted at several different locations across the State on 28 and 29 July and 31 August 1981. Duke presented part of its case in Raleigh from 26 August to 10 September 1981. Upon Duke's request for a continuance, the Commission held the hearing open for additional testimony on 23 November 1981 concerning the operational status of Duke's McGuire Nuclear Generating Unit One. The Commission issued its final order on 11 February 1982 allowing $166,403,000 of the $211,000,000 annual revenue increase Duke had requested. In determining Duke's revenue requirements, the Commission used data from a test year ending 31 December 1980 and decided that 11.92% was an overall fair rate of return.

Intervenors Conservation Council of North Carolina, Great Lakes Carbon Corporation, and Kudzu Alliance appealed the Commission's order.

*Kennedy, Covington, Lobdell & Hickman, by Clarence W. Walker and Stephen K. Rhyne, and Steve C. Griffith, Jr., George W. Ferguson, Jr., and William L. Porter for applicant-appellee Duke Power Company.*

*Daniel V. Besse for intervenor-appellant Conservation Council of North Carolina.*

*Byrd, Byrd, Ervin, Blanton, Whisnant & McMahon, P.A., by Robert B. Byrd and Sam J. Ervin, IV, for intervenor-appellant Great Lakes Carbon Corporation.*

*Edelstein and Payne, by M. Travis Payne for intervenor-appellant Kudzu Alliance.*

BECTON, Judge.

The scope of review for this appeal is set forth in N.C. Gen. Stat. § 62-94(b) (1982). Appellants contend the Commission committed prejudicial error by arbitrarily and capriciously keeping the hearing open until 23 November 1981, and by including expenditures for McGuire Nuclear Generating Unit One and for certain construction work in progress (CWIP) in Duke's rate base despite a lack of competent, material, and substantial evidence. We disagree. However, the case must be remanded because of the failure of the Commission to set forth all the findings and reasons for its order as required by N.C. Gen. Stat. § 62-79(a)(1) (1982).

I

[1] Appellants contend the Commission erred by including in the rate base $29,685,371 of allowance for funds used during construction (hereinafter AFUDC) which arose after 1 July 1979 but accrued on CWIP occurring prior to that date. AFUDC represents the cost to a utility of financing new construction, similar to the interest charge on a loan. It has been recognized as a legitimate part of construction costs: "The interest [AFUDC] on the investment in this addition to plant, during the construction, is a part of its costs, just as truly as is the purchase price of the bricks, steel, copper wire, labor, etc., which go into the construction." *State ex*

State ex rel. Utilities Commission v. Conservation Council

*rel. Utilities Commission v. Morgan*, 278 N.C. 235, 240, 179 S.E. 2d 419, 422 (1971). Because AFUDC accrues during construction, it is a CWIP expenditure.

The version of N.C. Gen. Stat. § 62-133(b)(1) effective for the present rate case provided that "reasonable and prudent expenditures for construction work in progress after [1 July 1979] shall be included . . ." as part of the utility's cost of property upon which the Commission was to fix a fair rate of return. G.S. § 62-133(b)(1) (Supp. 1979) (amended 1982). The $29,685,371 AFUDC questioned by appellants was a reasonable CWIP expenditure, it accrued after 1 July 1979; and, therefore, it was properly included in the rate base.

While some of us may question the wisdom of the legislation, G.S. § 62-133(b)(1) is designed to make utility customers finance reasonable construction costs arising after 1 July 1979, regardless of whether that construction becomes useful to the customers. Consequently, this Court will uphold the Commission's inclusion of post-1 July 1979 AFUDC in Duke's rate base. The fact that actual construction upon which the AFUDC is based took place before 1 July 1979 does not alter this result since the AFUDC costs were incurred after 1 July 1979. Nor are we convinced that Duke will receive a "double recovery" on AFUDC which is part of CWIP expenditures included in the rate base since N.C. Gen. Stat. § 62-133(b)(4a) (1982) requires the utility to discontinue capitalization of that AFUDC.

II

[2] Appellants contend the Commission erred by including $103,880,000 of costs related to the Cherokee Nuclear Station as CWIP in Duke's rate base. Appellants essentially argue that the Cherokee costs were not for construction work in progress because Duke had indefinitely delayed construction of the plant. Although some evidence supports the appellants' claim that no progress was being made, this Court does not have the authority to substitute its judgment for factual findings of the Commission. The Commission's findings are conclusive when supported by competent, material, and substantial evidence in view of the entire record. G.S. § 62-94(b); *State ex rel. Utilities Commission v. Intervenor Residents*, 305 N.C. 62, 286 S.E. 2d 770 (1982).

We are aware that Duke, during the pendency of this action on appeal, abandoned its Cherokee Nuclear Plant and now seeks to pass on to its customers part of the cost of constructing, financing, and abandoning the plant. The Commission may well have reached a different decision had they known then what they know now. But at the hearings, Duke's witnesses testified that they hoped and expected to resume construction on Cherokee. They attributed the delay to unfavorable economic conditions that forced Duke to spend less on new construction. They felt the Cherokee units would eventually be needed to bolster declining reserve margins. Duke had begun construction on Cherokee, continued to have about 200 people working there, and had not cancelled any contracts relating to construction of the plant. This evidence, while not convincing enough to satisfy all reasonable persons, supports, considering our scope of review under G.S. § 62-94(b), the Commission's finding and conclusion that construction work was in progress on Cherokee and that the costs should be included as CWIP in Duke's rate base. Considering what has now happened with Cherokee, the legislature may be inclined to graft onto N.C. Gen. Stat. § 62-133(b) (1982) a requirement that utilities set a definite completion date for new projects before they qualify as construction work in progress. The statute does not now require that, and we, therefore, uphold the Commission's decision based on the law and evidence which the Commission had to consider.

### III

[3] Appellants next contend the Commission illegally kept the hearing open to receive additional evidence concerning McGuire Nuclear Generating Unit No. One, and that McGuire should not have been included in the rate base as "used and useful" utility property. Appellant Great Lakes Carbon Corporation further contends the Commission failed to make the proper accounting adjustments when including McGuire in the rate base.

N.C. Gen. Stat. § 62-72 (1982) authorizes the Commission to make rules of procedure. The North Carolina Supreme Court has interpreted the legislative grant of authority to the Commission to mean "the Commission may regulate its own procedure within broad limits" and that it may suspend or waive its rules. *State ex rel. Utilities Commission v. Carolinas Committee*, 257 N.C. 560, 569, 126 S.E. 2d 325, 332 (1962). Thus, the Commission has the

power, within its discretion, to grant a continuance or extend a hearing. Appellants claim the Commission abused its discretion in the present case by acting arbitrarily and capriciously. The evidence does not support appellants' charge. The Commission extended the hearing to allow evidence on the "used and useful" status of McGuire Unit One because the Commission felt it was "in the best interest of the company and its customers" to do so. The Commission estimated that postponing inclusion of McGuire Unit One in the rate base for one year as appellants wished would mean capitalization of an additional $48,500,000 in AFUDC, raising the retail cost of service by $224,400,000 over the life of the plant.

[4] The Commission did not err in finding McGuire Unit One to be "used and useful" pursuant to G.S. § 62-133(b)(1). The record is replete with evidence supporting the Commission's finding: By 23 November 1981 over 279,000,000 kWh had been produced by McGuire Unit One; it was operating well at 50% of rated capacity; and Duke expected to increase capacity without problems or delays. A power plant can be "used and useful" without operating at full capacity. This Court cannot reverse or modify the Commission's finding merely because we might have reached a different result on the evidence or because subsequent developments may have cast a different light on the evidence. *See State ex rel. Utilities Commission v. General Telephone Co.*, 281 N.C. 318, 189 S.E. 2d 705 (1972).

Appellant Great Lakes Carbon Corporation is mistaken in asserting that the inclusion of McGuire Unit One in the rate base was done without necessary accounting adjustments. Testimony at the hearing indicated McGuire would be producing less expensive power as a substitute for power from generating plants with higher fuel costs. The Commission accounted for this by reducing Duke's base fuel cost by .1567¢ per kWh for fuel savings related to operation of McGuire Unit One. Contrary to appellant's assertions, no adjustment in revenues was needed because Duke was not going to sell additional power that would bring in extra revenues.

IV

Appellants further contend that the Commission's findings on CWIP expenditures included in the rate base are inadequate as a matter of law. G.S. § 62-79(a) requires that:

All final orders and decisions of the Commission shall be sufficient in detail to enable the court on appeal to determine the controverted questions presented in the proceedings and shall include:

(1) Findings and conclusions and the reasons or bases therefor upon all the material issues of fact, law, or discretion presented in the record, and

(2) The appropriate rule, order, sanction, relief or statement of denial thereof.

A finding that fails to meet the requirements of G.S. § 62-79(a) may cause the case to be remanded under G.S. § 62-94(b)(4).

In the present case, the Commission's Finding of Fact Number 7 is a conclusory recitation of the factors in the relevant statute, G.S. § 62-133(b)(1):

7. The reasonable original cost of Duke's property used and useful, or to be used and useful within a reasonable time after the test period, in providing the service rendered to the public within this State, less that portion of the cost which has been consumed by previous use recovered by depreciation expense, plus the reasonable original cost of investment in plant under construction (construction work in progress or CWIP) less cost-free capital is $2,138,009,000.

Standing alone, this finding of fact does little to facilitate appellate review or satisfy G.S. § 62-79(a). However, the Commission's lengthy order also includes a section entitled "Evidence and Conclusions for Finding of Fact No. 7." While it would be more appropriate to include the "reasons or bases" for the finding of fact with the finding of fact, the Commission has not violated G.S. § 62-79(a) or prejudiced appellants by stating the evidence with its conclusions of law instead of with its findings of fact.

The "evidence" which constitutes the "reasons or bases" for Finding of Fact Number 7 consists of a summary of the arguments of statutory interpretation made by appellants. The Commission then rejects appellants' argument, concluding that all Duke's CWIP expenditures, and specifically those for the Cherokee plant and for post-1 July 1979 AFUDC, were reasonably in-

curred and needed to provide adequate electric service to Duke's customers in the future.

The Commission's findings and reasons with regard to inclusion of CWIP in the rate base are scant and barely pass muster under G.S. § 62-79(a). But the Commission does satisfy the need under G.S. 62-79(a) "to enable the court on appeal to determine the controverted questions" since appellants' arguments were clearly summarized and rejected.

[5] Appellants insist that in fixing rates pursuant to G.S. § 62-133(b)(1) the Commission must make specific findings not only on the reasonableness of CWIP costs, but also on the reasonableness of including CWIP in the rate base. We disagree. G.S. § 62-133(b)(1), in the version relevant to this case, stated, ". . . reasonable and prudent expenditures for construction work in progress after [1 July 1979] *shall* be included . . . ." (emphasis added). The plain and unambiguous wording of the statute required that the Commission include CWIP in the rate base once it determined that the expenditures were reasonable and prudent.

Appellants also maintain that findings as to the reasonableness of CWIP are inadequate unless they separately address specific expenditures for each plant, how much the plant will ultimately cost, when it will be needed, and when it will be completed. As this Court recently stated in *State ex rel. Utilities Commission v. N.C. Textile Mfrs. Assoc.*, 59 N.C. App. 240, 249, 296 S.E. 2d 487, 493 (1982):

> To require the Company to introduce evidence with respect to every item comprising CWIP would be an exercise in futility. The burden of proof would be unduly and unnecessarily burdensome, and the ratemaking process would become even more time consuming and difficult of administration.

## V

[6] Appellants contend the Commission failed to ascertain Duke's reasonable operating expenses as required by N.C. Gen. Stat. § 62-133(b)(3) (1982) when it determined the base fuel cost from a fuel cost previously set in an expedited N.C. Gen. Stat. § 62-134(e) (Supp. 1979) (repealed 1982) fuel cost adjustment proceeding. Finding of Fact Number 16 indicates the Commission in the present general rate case established a base fuel cost of

1.3093₵ per kWh by taking the 1.4660₵ per kWh cost set in a recent G.S. § 62-134(e) proceeding and reducing it by .1567₵ per kWh for fuel savings related to operation of McGuire Unit One. The "Evidence and Conclusions for Finding of Fact No. 16" note that a Public Staff witness recommended a base fuel cost of 1.1944₵ per kWh, calculated from the cost set in an earlier G.S. § 62-134(e) proceeding less the fuel savings due to McGuire. The only difference between the Public Staff recommendation and the Commission's finding is that the Commission used a fuel cost from a more recent G.S. § 62-134(e) proceeding.

The G.S. § 62-134(e) proceeding was intended to allow a utility to frequently change its rates based solely on fluctuations in fuel costs. *State ex rel. Utilities Commission v. Public Staff,* --- N.C. ---, --- S.E. 2d --- (filed 7 September 1983). The reasonableness of a utility's fuel costs may not be considered in a G.S. § 62-134(e) proceeding. *Id.* Indeed, "[t]he words of G.S. § 62-134(e) make it clear that only changes in rates *based solely upon the increased cost of fuel* are to be considered." *Utilities Commission v. Edmisten, Atty. General,* 291 N.C. 451, 232 S.E. 2d 184 (1977). In contrast, the N.C. Gen. Stat. § 62)133(b)(3) (1982) requirement that the Commission ascertain "reasonable operating expenses" has been interpreted to mean the reasonableness of fuel costs must be considered in general rate cases. *Id.* This Court recently held that fuel costs from a fuel adjustment proceeding may be used as the basis for fuel costs in a general rate case if the Commission also considers the reasonableness of the fuel costs in the general rate case:

> The statute, G.S. 62-134(e), requires the Commission to investigate an application filed pursuant to it, requires the Commission to hold a public hearing, and provides that the Commission's order shall be based upon the record adduced at the hearing, "such record to include all pertinent information available to the Commission at the time of the hearing." The action of the Commission is subject to appellate review. Under the statutory procedure provided, we perceive no reason to reconsider the same fuel costs in a general rate case, although questions concerning efficiency of operations, heat rate, and plant availability should, of course, be considered in a general rate case.

*State ex rel. Utilities Commission v. N. C. Textile Mfrs. Assoc.,* *supra,* at 244.

According to the preceding case law, the Commission did not err in using fuel costs from a G.S. § 62-134(e) proceeding, adjusted for fuel savings due to McGuire Unit One, to determine the fuel costs for this general rate case, to the extent that the fuel costs determined in the G.S. § 62-134(e) proceeding were based solely upon the increased cost of fuel. *Utilities Comm. v. Edmisten, Atty. General,* 291 N.C. 451, 232 S.E. 2d 184 (1977). However, the Commission must also examine Duke's fuel costs, which are a major component of operating expenses, for reasonableness. G.S. § 62-133(b)(3). The Commission must make findings and give reasons concerning the reasonableness of the base fuel cost it set for Duke in its order since the reasonableness of fuel costs is a material issue. G.S. § 62-79(a). Although the hearing transcript contains some testimony on the reasonableness of costs incurred by Duke for fuel, there is no indication in the order of the Commission that it ever considered and ruled upon the reasonableness of fuel costs. This case is therefore remanded to the Commission to make proper findings on the reasonableness of Duke's fuel costs. Absence of proper findings is an error of law and basis for remand under G.S. § 62-94(b)(4) because it frustrates appellate review.

Appellants' other arguments lack merit.

Affirmed in part and remanded in part.

Chief Judge VAUGHN concurs in part and dissents in part.

Judge BRASWELL concurs.

Chief Judge VAUGHN concurring in part and dissenting in part.

I am in agreement with the majority's ultimate decision on all of the questions discussed except the last.

I dissent from the part of the decision that remands the case to the Commission for findings on the reasonableness of Duke's fuel costs. The Commission heard evidence, including testimony from an accountant for the Public Staff, that Duke's fuel expenses

were reasonable. We have no reason to doubt that the Commission considered this evidence when it ascertained the utilities' reasonable operating expenses as required by G.S. 62-133(b)(3). I would affirm the order of the Commission.