DUKE POWER COMPANY v. HARGROVE BOWLES, TREASURER OF THE
CITY OF GREENSBORO.

(Filed 4 June, 1948.)

**1. Taxation § 14—**

While the term "privilege tax" includes franchise taxes as well as
license taxes, a franchise is a special kind of privilege constituting a prop-
erty right, which is ordinarily transferable and exclusive, and involves
the use of public facilities.

**2. Same—**

The word "privilege" is too broad, *per se*, as a classification for taxa-
tion, but is usually particularized into licenses and franchises in classify-
ing businesses for taxation, and as used in our taxing statutes, the term
"privilege tax" does not ordinarily include franchise taxes.

**3. Taxation § 27: Municipal Corporations § 42—**

The power granted the City of Greensboro by Sec. 50, Chap. 37, Private
Laws of 1923, to impose franchise taxes is not limited by Sec. 203 (5),
Chap. 445, Public Laws of 1933 (G. S., 105-116 (6)), to the amount of
municipal franchise taxes levied at the time of the enactment of the gen-
eral statute, since the general statute imposes the limitation upon "privi-
lege or license" taxes, which in its context does not include franchise
taxes, it being apparent that the Legislature would have used the term
"franchise" *co nomine* if it had intended to include franchise taxes within
the limitation.

**4. Statutes § 13—**

Repeal by implication is not favored, and a general statute which has
no repealing clause will not repeal a prior local statute unless the legisla-
tive intent to supersede the prior statute is clear.

DEFENDANT's appeal from *Armstrong, J.*, 12 April, 1948, Civil Term,
GUILFORD Superior Court.

This suit arose out of a controversy between the plaintiff Company
and the City of Greensboro over the imposition of a franchise tax for the
fiscal year 1947-1948, greatly exceeding the franchise tax theretofore
imposed. The plaintiff, contending that the tax imposed was in excess
of the maximum limit established by the Public Laws, paid the tax under
protest and sued for refund of the excess. The parties having waived
jury trial, the case was submitted to Armstrong, J., at the 12 April,
1948, Civil Term of Guilford upon the pleadings and admissions, and
stipulated facts appearing in the record.

Decision must rest upon the construction of pertinent, possibly inter-dependent statutory laws in force at the time the tax was imposed, particularly the private statutes authorizing the City of Greensboro to levy a franchise tax upon the plaintiff with respect to the privilege granted and the Public Laws which plaintiff claims modify and limit that authority. Therefore, an attempt will be made to set out these laws in the chronological order of their enactment, along with the history of the imposition of the tax from year to year, in parallel statement.

Such bearing as the nature and extent of the chartered or franchised activities and operations of the plaintiff and the facilities of the municipality utilized may have upon the question will be summarized from the record where important, and stated in the proper connection.

The defendant municipality derives its authority for the imposition of the tax from Chapter 37, Private Laws of 1923, particularly Section 50. Section 50 is too long for reproduction in its entirety, but pertinent provisions are summarized:

It provides in substance (and in phraseology where that is important), that no franchise shall be granted by the City until the question has been submitted to a vote of the qualified electors of the City and approved by the majority vote; that the franchise shall not exceed 50 years in duration; reserves the right to compel performance with full superintendence, regulation and control within the police powers given the City; provides that the specific grant shall be put in the form of an ordinance and that certain specified rights and obligations shall be therein expressed; and further provides:

". . . that any and all rights, privileges and franchises that have been heretofore, or that may be hereafter, granted to or held by any person, firm or corporation, in the streets, alleys, sidewalks, public grounds or places in said city, shall be subject to a tax by said city in such amount as the council may think to be just, separate from and in addition to the other assets of such person, firm or corporation, and in addition to a license tax, and the council may require the rendition and assessment thereof accordingly: . . ."

Under this authority the City, having come to terms with plaintiff's predecessor, entered into an agreement taking the form of a contract and incorporated in the City ordinance and in compliance with the statute the question was submitted to the qualified voters and the issuing of the franchise was approved; and on 30 January, 1929, the franchise was granted to plaintiff's predecessor, or to put it technically, the proposed franchise, through the approval by referendum, became effective. Subsequently the separate franchised activities became merged; and by contract with the City, trackless trolleys have become substituted for street railways.

The plaintiff, successor in title to the franchise rights of the former corporation, to whom the franchise was given 30 January, 1929, is engaged in the business of furnishing and selling electricity, electric light, current, power and gas, and operating trackless trolleys and busses in the City of Greensboro and other territory.

Under the 1923 law, above cited, the City of Greensboro levied and assessed on the plaintiff and its predecessors in title a franchise tax of $5,000 per annum from 1929 to 1935, inclusive. In 1936 the franchise tax was increased to $7,500 by appropriate ordinance. The plaintiff paid to the City the franchise tax of $7,500 down to the year 1946; and on 26 June, 1947, paid $7,500 of the franchise tax levied for the fiscal year 1947-1948. On 15 July, 1947, after notice, an ordinance was passed further increasing the franchise tax to $15,000 a year. On 24 July, 1947, the plaintiff, under written protest, paid to the defendant the remaining sum of $7,500 imposed for the fiscal year 1947-1948 and promptly made a written demand for its refund; and sought judgment for that amount with interest; G. S., 105-406.

At the time the 1923 statute, authorizing the municipal tax, was passed the State did not impose a separate franchise or privilege tax upon companies furnishing electricity, gas and transportation. Section 83a, Chapter 101, Public Laws 1925, for the first time imposed an annual tax of one per cent on the gross revenues from such business and put these corporations in a separate classification. Section 203, Chapter 345, Public Laws 1929, increased the tax to two per cent, without any provision of the law affecting the Private Laws of 1923, containing the City's authority to tax. By Section 203, Chapter 427, Public Laws 1931, the State tax was again increased to five per cent. In Section 203, Chapter 445, Public Laws 1933, the tax was increased to six per cent; and a limitation was placed on the amount of *privilege* or *license* tax which a municipality might impose on such corporations. The pertinent section, 203 (5), is as follows:

> "(5) Companies taxed under this section shall not be required to pay the franchise tax imposed by section two hundred ten or two hundred eleven of this article, and no county shall impose a franchise or privilege tax upon the business taxed under this section, and no city or town shall impose a greater privilege or license tax upon such companies than that which is now imposed by any such city or town."

This limitation remained the same in Chapter 371, Public Laws 1935, but was modified in Section 203 (6), Chapter 127, Public Laws 1937, and made to read as follows:

> "(6) Companies taxed under this section shall not be required to pay the franchise tax imposed by section two hundred ten or two

hundred eleven of this article, unless the tax levied by sections two hundred ten and two hundred eleven of this article exceed the tax levied in this section, and no county shall impose a franchise or privilege tax upon the business taxed under this section, and no city or town shall impose a greater privilege or license tax upon such companies than the aggregate privilege or license tax which is now imposed by such city or town."

It is thus incorporated in Section 203 (6), Chapter 158, Public Laws of 1939,—the Permanent Revenue Act,—and is now codified as G. S., 105-116 (6).

The contention of the plaintiff is that the several Public Laws cited above operated to repeal or modify the Private Laws of 1923 so as to limit the authority of the City to impose a greater franchise tax than that imposed prior to their enactment. It is necessary to compare the 1939 Act with the previously existing Private Laws of 1923, critically in point, to settle that question.

In making up the case on appeal it was agreed between the parties that "the sole question involved in this action is whether the City of Greensboro was authorized under existing laws to levy the tax upon the plaintiff that the plaintiff now seeks to have refunded."

Judge Armstrong, being of the opinion that upon the facts presented the plaintiff was entitled to the refund demanded, entered a judgment to that effect, from which the defendant appealed.

*W. S. O'B. Robinson, Jr., and R. M. Robinson for plaintiff, appellee.*

*Herman C. Wilson and Brooks, McLendon, Brim & Holderness for defendant, appellant.*

SEAWELL, J.   Section 50 of Chapter 37, Private Laws of 1923, confers on the City of Greensboro the power to grant a franchise of the sort concerned in this controversy, and provides that it "shall be subject to a tax by said City in such amount as the council may think to be just" and "in addition to a license tax."

The plaintiff is operating under a franchise granted under this authority to a predecessor in title. Prior to 1933 the tax rate was advanced from $5,000 to $7,500 for the fiscal year; and in 1947 the city council, by appropriate ordinance, further increased the tax rate to $15,000. There is no question raised as to whether the tax is excessive or unjust. The appellee contends that the authority of the municipality to increase the tax beyond the prior amount is divested by operation of Section 203 (5), Chapter 445, Public Laws of 1933, and successive statutes of similar import (the legislative history of which is above set out), finally incorporated in the Permanent Revenue Act of 1939, and now appearing

in that Act, as codified in the General Statutes, as Section 105-116, Sub-section 6. For convenience of comparison we requote the pertinent part of this subsection:

> ". . . no county shall impose a franchise or privilege tax upon the business taxed under this section, and no city or town shall impose a greater privilege or license tax upon such companies than the aggregate privilege or license tax which is now imposed by any such city or town."

Note that the prohibition against the franchise tax is against the county, and not against the municipality.

The applicability of this statute as a limitation on the authority given under the 1923 law, either by modification or partial repeal of that statute, is the sole question before us.

It may be said that decision turns upon the meaning and content to be assigned to the word "privilege," twice used in the subsection invoked in support of the contention that the City of Greensboro has no longer power to tax the plaintiff's franchise as attempted. Had the Legislature used the word "franchise," which appellee asks us to find implied in the term "privilege," the grammatical sense would not be ambiguous.

We quite agree that the result should not be made to depend on a play upon words, but doubt whether observance of that propriety works to appellee's advantage.

The franchise tax is a privilege tax, and so is the license tax,—both are so recognized in our revenue laws. Compare G. S., 105-114 (franchise tax) and G. S., 105-33 (license tax). But the word "privilege" as so applied is too broad, *per se,* to yield the distinctions necessary to support a practical system of levy. In our system the tax is not levied on the simple classification of the subjects as a "privilege tax," nor does that sort of classification obtain as a basis of levy in any other system of which we are aware. Necessary regard for the nature and magnitude of the privilege taxed, the relative financial returns to be expected of the business or activities under franchise, and the burden put on government in regulating, protecting and fostering the enterprise demands and re-ceives a finer classification as essential to a fair apportionment of the tax burden and the propriety of the rate imposed. There could scarcely be conceived a wider difference within any such general classification than exists between an ordinary occupational license and a franchise and the range of activities which the latter usually includes. That fact must be borne in mind in any attempt to find the legislative intent in using the word "privilege" within the classification.

The generic term "privilege" as applied to the tax, contextually un-aided, cannot be arbitrarily construed to mean or to include, *ex vi termini,*

a franchise tax on every occasion of its use in the scheduled divisions of taxable subjects; and to assign the word such an office would lead to confusion.

Subsection 6, *supra,* comprises a single sentence. Grammatically construed, even without comparison with other sections of the same schedule which are presently cited, it is not favorable to appellee's contention. We find that counties are prohibited from levying "a franchise or privilege tax" upon the subject of the State tax; but in the clause relating to municipalities the reference is to "privilege or license tax" without a like specific reference to "franchise tax." The contrast in the use of the more definitive term franchise in the one connection and its omission in the other is of substantial significance.

There are other contextual indications supporting the view that the omission was advisedly made. Examination of the limitations imposed on county and municipal taxation of franchises taxed by the State in Schedule C discloses that elsewhere where the power to levy tax on the franchise is taken away from the municipality, or in any way limited, the term "franchise" is expressly used. In Subsection 105-115 (f), the section immediately preceding, we find: "No county, city or town shall levy a license, franchise or privilege tax on the business taxed under this section;" in Sec. 105-117 (3), immediately following, "No county, city or town shall impose any franchise or privilege tax on the business taxed under this subject;" in Section 105-119 (5) (b); "Counties shall not levy a franchise, privilege, or license tax on the business taxable under this section and municipalities may levy the following license tax;" in Section 105-121 (5), "Companies paying the tax levied in this section shall not be liable for franchise tax on their capital stock, and no county, city, or town shall be allowed to impose any additional tax, license, or fee, other than *ad valorem* taxes." Section 105-122 (5), "Counties, cities and towns shall not levy a franchise tax on corporations taxed under this section."

There is a special significance attached to the character and placement of these prohibitions, the express use of the word franchise in them, and its omission in the limitation provided in Subsection 105-116 (6), since, while counties and cities do offer some facilities with respect to carrying on the business described and taxed by the State, in other sections, their part in it is comparatively small; whereas, as to the business covered by the franchise in Section 105-116, completely localized and catering to business and traffic built up within the town, and using facilities provided by the municipality at the expense of the taxpayers in that community alone, the municipal contribution to the growth, prosperity and financial success of the franchised enterprise, and therefore, the value of the franchise, is vastly larger than that of the State.

There is another reason perhaps as compelling why the simpler term privilege tax is inadequate to imply a franchise tax in the connection used, and this lies in the nature of the franchise as distinguished from simpler privilege or license taxes in legal usage.

As a privilege, a franchise is a special kind of privilege,—and it is more. A franchise tax of this sort when granted is of itself a property right and ordinarily is transferable. It runs for a definite period, usually with mutual obligations and appropriate sanctions. Its activities are on a major scale; and basic privileges going with the grant involve the use of facilities furnished by the municipality through taxation of the inhabitants and often in derogation of their privileges. When all the normal services to the town and its inhabitants and those who frequent it are merged in one franchise, as here, it usually becomes in fact, if not in law, exclusive.

It is not one thing only but the omnibus of incident constituting the franchise, important and distinguishing, that calls for adequate terms of reference or designation *ad rem ipsam pertinens.*

It may be further said that the frequency with which "privilege or license tax" has been used to designate a mere license tax has given the term "privilege" a secondary meaning in derogation of its general significance, in which sense it was probably used in the text. At any rate, when the power to tax was given the municipality the subject was defined without ambiguity as a "franchise,"—*eo nomine.* The necessity of better correlation than that used in the subsection,—that is, a like certainty in pointing to the subject from which the power to tax was withdrawn as that originally observed in granting it,—was not beyond the intelligence of the legislative body, and could hardly have escaped attention if the limitation had been aimed at the franchise tax.

Under these conditions we are unable to accept the hypothesis that the State, in currently advancing the State-imposed franchise tax from five per cent to six per cent on gross income, limited the municipal franchise tax as a means of compensating or adjusting the taxpayer burden. The basis of the implication is not sufficiently supported to justify the assumption that the State intended to practically take over a source of revenue peculiarly and equitably belonging to the field of municipal taxation and, by final inclusion in the Permanent Revenue Act, to adopt it as a State policy. We must assume that the State is not antagonistic to the growth and expansion of its municipalities, or without appreciation of their contribution to its cultural and economic life, or unaware of the increasing burden placed upon them and the necessity of preserving to them a due proportion of the tax revenues necessary to their support.

We do not find it necessary to pass on the question whether the franchise under review contains contractual obligations constitutionally pro-

tected against impairment by statute. In the absence of legislative intent to interfere with the franchise, that question does not at present arise.

Because of the difference in the nature of the tax involved, we do not find *Cox v. Brown,* 218 N. C., 350, 11 S. E. (2d), 152, cited by the appellee, applicable authority.

The General Statute relied on to toll the taxing power of the municipality has no applicable repealing clause. In that situation the rule of construction is as stated in *Charlotte v. Kavanaugh,* 221 N. C., 259, 263, 20 S. E. (2d), 97:

> "The rule as to the effect of a subsequent general statute on a local statute is stated in *Felmet v. Commissioners,* 186 N. C., 251, 119 S. E., 353: 'A local statute enacted for a particular municipality is intended to be exceptional and for the benefit of such municipality, and is not repealed by an enactment of a subsequent general law. *Rogers v. U. S.,* 185 U. S., 83; *Wilson v. Comrs.,* 183 N. C., 638; *Alexander v. Lowrance,* 182 N. C., 642; *Bramham v. Durham,* 171 N. C., 196; *S. v. Johnson,* 170 N. C., 688; *Cecil v. High Point,* 165 N. C., 431; *School Comrs. v. Aldermen,* 158 N. C., 197.'"

Certainly if the legislative intent were sufficiently clear the general statute would prevail without a repealing clause; but repeal by implication is not favored and we do not find that the legislative intent justifies that construction.

For the reasons above stated, the judgment of the court below is in error and upon the facts considered must be reversed. The cause is remanded to Guilford Superior Court for judgment in accordance with this opinion.

Reversed.