SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY v. I. L. CLAYTON, COMMISSIONER OF REVENUE OF THE STATE OF NORTH CAROLINA.

(Filed 23 March, 1966.)

**1. Statutes § 5—**
> The objective of statutory construction is to ascertain the legislative intent, and to this end the words of a statute will be construed in accordance with their meaning at the time of enactment.

**2. Taxation § 26—**
> A franchise tax is imposed for the privilege of engaging in business in this State, the amount of tax varying with the nature and magnitude of the privilege taxed, its expected financial return, and the burden on the State in regulating, protecting and fostering the enterprise.

**3. Same—**
> The word "rentals" as used in G.S. 105-120(b), imposing a tax upon the gross receipts of telephone companies, *is held* to refer to the "rentals" of telephones pursuant to the company's public utility services for which the franchise tax is imposed, and does not include rentals charged electric power companies and others for the use of its poles, this being consonant with the history of the statute and its purport.

**4. Taxation § 23—**
> Tax statutes are to be strictly construed against the State and in favor of the taxpayer.

MOORE, J., not sitting.

PLESS, J., and RODMAN, E.J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Mallard, J.,* May 1965 Special Nonjury Session of WAKE, docketed in the Supreme Court as Case No. 522 and argued at the Fall Term 1965.

Action instituted by Southern Bell Telephone and Telegraph Company under the provisions of G.S. 105-266.1 and G.S. 105-267 to recover franchise taxes, with interest, paid to the Commissioner of Revenue. The original defendant, William A. Johnson, having resigned as Commissioner of Revenue, the present Commissioner, I. L. Clayton, has been substituted for him.

Plaintiff, in the course of its business of transmitting messages by telephone, utilizes wires strung on poles. With 42 other utilities and municipalities plaintiff has entered into contracts which provide for the joint and reciprocal use of each other's poles to support wires, cables, and attachments. In 20 of the contracts, the annual pole rent is $1.00 per pole; in the other 22, $3.00 per pole. In practice, the party making the excess usage of the other's poles makes an annual adjustment payment. During the 12 quarters ending June 30, 1963, plaintiff collected $587.00 in pole rent. After deducting the pole rent due it, plaintiff paid out $1,215,927.50 for excess pole usage.

In filing its franchise tax returns for this period, plaintiff included in its base the net receipts, the $587.00, actually received under these pole rental agreements. It also included, without having intended to do so (presumably as the result of an error in bookkeeping), $19,848.00 of pole rent credits. Thereafter, the Commissioner, purporting to act under G.S. 105-120, assessed additional taxes in the amount of $49,884.95. This assessment was made upon the rentals to which plaintiff was entitled for the use of its own poles by others but which had been credited against the amounts owed others for its excess usage of their poles. Plaintiff paid the assessment under protest and demanded refund. The demand was refused. Plaintiff also demanded refund of $1,190.99, plus interest, representing tax on the $19,848.00 which, it alleges, should never have been included in the franchise base. The Commissioner denied this claim, also, and plaintiff instituted this action to recover the sum allegedly paid by mistake and the tax assessment paid under protest.

The parties waived a jury trial and stipulated that all procedural prerequisites had been properly performed in apt time. Upon the undisputed facts, Judge Mallard entered judgment that plaintiff was entitled to recover the sums paid, with interest, in accordance with its prayer for relief. Defendant appeals.

*Joyner & Howison for plaintiff appellee.*

*Attorney General Bruton, Deputy Attorney General Abbott for defendant appellant.*

SHARP, J.   Are poles rentals charged by a telephone company to electric power companies and other users of its poles includable in its franchise tax base? The answer to this question must be found in G.S. 105-120, the pertinent portions of which follow:

"Franchise or privilege tax on telephone companies.—(a) Every person, firm, or corporation, domestic or foreign, owning and/or operating a telephone business for the transmission of messages and/or conversations to, from, through, in or across this State, shall, within thirty days after the first day of January, April, July and October of each year, make and deliver to the Commissioner of Revenue a quarterly return, verified by the affirmation of the officer or authorized agent making such return, showing the total amount of gross receipts of such telephone company for the three months ending the last day of the month immediately preceding such return, and pay, at the time of making such return, the franchise, license or privilege tax herein imposed.

(b) An annual franchise or privilege tax of six per cent (6%), payable quarterly, on the gross receipts of such telephone company, is herein imposed for the privilege of engaging in such business within this State. *Such gross receipts shall include all rentals, other similar charges, and all tolls received from business which both originates and terminates in the State of North Carolina,* whether such business in the course of transmission goes outside of this State or not. . . ." (Emphasis added.)

In construing a statute, the Court's "aim is to discover the connotation which the legislature attached to the words, phrases, and clauses employed, (thus) the words of a statute must be taken in the sense in which they were understood at the time when the statute was enacted, and the statute must be construed as it was intended to be understood when it was passed." 50 Am. Jur., Statutes § 236 (1944); *Cab Co. v. Charlotte,* 234 N.C. 572, 68 S.E. 2d 433; *Mullen v. Louisburg,* 225 N.C. 53, 33 S.E. 2d 484.

Specifically, the dispositive question here is whether, by its use of the italicized words in paragraph (b) above, the Legislature intended to limit *rentals* to those directly connected with taxpayer's business, *i.e.,* receipts from local exchange service, or whether it intended the franchise tax base to be the Company's gross receipts from rentals of *every* kind, without limitation. The Commissioner contends: (1) that *gross receipts* mean total collections from *all* sources before any deductions, and that "no amount of semantics

can get around the meaning of 'gross receipts' unless otherwise limited"; (2) that the tax levied by G.S. 105-120 is for the privilege of exercising a monopolistic franchise and should be construed in favor of the taxing authority. Plaintiff contends that the language of the statute and its legislative history disclose the intent of the Legislature to include in gross receipts only rentals paid for the use of telephones, *i.e.*, local exchange service.

Franchise taxes are imposed for the privilege of engaging in business in this State. G.S. 105-114. The amount of the tax varies with "the nature and magnitude of the privilege taxed, the relative financial returns to be expected of the business or activities under franchise, and the burden put on government in regulating, protecting and fostering the enterprise. . . ." *Power Co. v. Bowles,* 229 N.C. 143, 147, 48 S.E. 2d 287, 290. The ordinary commercial corporation pays a franchise tax which approximates $1.50 per thousand of capital or plant value used in North Carolina. G.S. 105-122(d). For the privilege of engaging in the *telephone business,* a telephone company pays 6% of its gross receipts as specified in G.S. 105-120.

Telephone companies are not engaged in the business of renting either real estate or utility poles. Such rentals, when they occur, are purely incidental arrangements. The income of a telephone company comes from service charges for the transmission of messages by telephones which remain the property of the company. The customer "rents" the telephone in his home or place of business. For a monthly sum (now fixed by the North Carolina Utilities Commission), he may make unlimited local calls. Tolls for long distance calls are extra.

The predecessor of the North Carolina Utilities Commission, the North Carolina Corporation Commission, was established by N. C. Public Laws 1899, ch. 164. Section 2 of that Act empowered and directed the Commission "(11) to make just and reasonable rates of charges for the *rental of telephones.*" (Italics ours.) The language, "rental of telephones" or "rental of telephone," was carried forward in every codification of these laws until the enactment of Chapter 1165 of the Session Laws of 1963. This Act repealed G.S. 62-122, which had authorized the Utilities Commission to fix rates and charges for specifically named utilities. For G.S. 62-122, the 1963 Act substituted G.S. 62-130, which, in general terms, directed the Commission to establish just and reasonable *rates* for all utilities. Thus, at the time sections (a) and (b) of G.S. 105-120 were enacted by Public Laws of 1939, ch. 158, § 207, the word *rental,* when used in connection with telephone companies, ordinarily referred to the rental of the telephone itself. Charges similar to these rentals

(as the orders of the Commission reveal) were monthly charges for special equipment such as outdoor sets, hand telephones, and extra lengths of cord for desk sets. Today, extra charges are made for colored sets, "push-button dialing," amplifiers, and other accouterments.

Receipts from local exchange telephone rentals, other similar charges, and intrastate tolls have always been considered a part of the franchise tax base. They account for the greater part of the Company's income; incidental revenue from pole leases, an infinitesimal part. We think the Legislature used the word *include* in the sense of "shall consist of." It was used, not to broaden the tax base, but to exclude from the base interstate tolls. We hold, therefore, that the word *rentals*, considered in its context, means local exchange rentals. To hold that the word *include*, as used in G.S. 105-120(b), is the equivalent of "also embrace," would mean that the Legislature added the major portion of the Company's income (rentals from local exchanges, other similar charges, and intrastate tolls) to a miniscule part of it, such as pole rents. That such was the legislative intent seems most improbable.

"Tax statutes are to be strictly construed against the State and in favor of the taxpayer." *Watson Industries v. Shaw, Comr. of Revenue*, 235 N.C. 203, 211, 69 S.E. 2d 505, 511. *Commonwealth v. Repplier Coal Co.*, 348 Pa. 372, 35 A. 2d 319. Had the Legislature intended to tax the telephone companies upon receipts other than revenues obtained from the services they were obligated to furnish the public, we think it would have specifically imposed the tax upon gross receipts *from any and all sources whatsoever* except those expressly exempted.

This was the conclusion reached by the U. S. Court of Appeals for the District of Columbia in *Chesapeake & Potomac Tel. Co. v. District of Columbia*, 325 F. 2d 217. Under a statute which levied a franchise tax on public utilities of "4 per centum on . . . gross receipts, from the sale of public utility commodities and services within the District of Columbia," the taxing authority assessed additional taxes on the plaintiff, based on amounts received by the plaintiff for services rendered to other telephone companies. It appeared that the plaintiff's equipment, etc., served as the central exchange for parts of Maryland and Virginia, and for the District itself. The plaintiff was directly compensated for such services by the Maryland and the Virginia franchise holders. The Court of Appeals was of the opinion that the tax imposed was "an excise tax on the privilege of furnishing franchised public utility services. . . ." and that plaintiff must include in gross receipts only those amounts re-

ceived from services which it was *obligated* to perform under its franchise. The court said:

> "(W)hen a public service company supplies services or facilities to another public utility company in the same field for the sole purpose of enabling the latter company to serve its customers more efficiently, such services are not 'public utility commodities or services' within the meaning of our statute, and thus are not subject to the gross receipts tax." *Id.* at 222.

As the court also pointed out, this construction encourages utilities to make greater use of each other's facilities, thereby reducing the cost of their services to the public. In addition to this economic benefit, there is an aesthetic one — it reduces the number of poles cluttering the streets and highways.

We hold that plaintiff's receipts from the pole rental contracts in question are not subject to the franchise tax imposed by G.S. 105-120. The judgment of the Superior Court is

Affirmed.

MOORE, J., not sitting.

PLESS, J., and RODMAN, E.J., took no part in the consideration or decision of this case.