IN THE MATTER OF: THE PROPOSED ASSESSMENT OF ADDITIONAL
FRANCHISE TAX FOR THE TAXABLE QUARTERS ENDED MARCH 31,
1980, JUNE 30, 1980 AND SEPTEMBER 30, 1980 BY THE SECRETARY OF
REVENUE OF NORTH CAROLINA v. CAROLINA TELEPHONE AND
TELEGRAPH COMPANY

No. 8510SC1243

(Filed 3 June 1986)

**Taxation § 26— franchise tax—revenues for yellow pages advertising—not gross
receipts**
> The revenues received by Carolina Telephone from the sale of adver-
> tisements to appear in the "yellow page" classified directory are not includable
> as "gross receipts" of a telephone company for franchise tax purposes as de-
> fined in N.C.G.S. § 105-120.

APPEAL by petitioner from *Bailey, Judge.* Judgment entered
20 August 1985 in Superior Court, WAKE County. Heard in the
Court of Appeals 10 April 1986.

Carolina Telephone and Telegraph Company (Carolina) is a
public utility corporation regulated by the North Carolina
Utilities Commission. In addition to its "white page" directories,
Carolina publishes "yellow page" directories and charges fees for
advertisements that appear in the "yellow page" portion of the
directories. One free listing is given to each business subscriber
in the appropriate "yellow page" classification. The directory
advertising aspect of Carolina's telephone system business is not
regulated by the Utilities Commission.

Pursuant to G.S. 105-120(a) and (b) Carolina is required to
make and deliver quarterly returns to the Secretary of Revenue
(Secretary) showing its total gross receipts for each quarter for
purposes of an annual franchise tax imposed by this State for the
privilege of engaging in the telephone business. By letter dated
30 April 1979 to the North Carolina Department of Revenue (De-
partment), Carolina reported its gross receipts for the first
quarter of 1979 and included a check for $2,525,376.59 in payment
of the tax due. Carolina also notified the Department that it had
excluded from total gross receipts its receipts from "yellow page"
advertising in the amount of $1,648,550.06. By letter dated 16 July
1979, the Franchise Tax Division of the Department concurred
with Carolina's exclusion of receipts from "yellow page" advertis-

ing. On 24 January 1980 the Franchise Tax Division withdrew its concurrence contending that revenues from "yellow page" advertising should be included in Carolina's gross receipts franchise tax base.

Subsequently, Carolina forwarded to the Department franchise tax reports omitting the yellow page revenues for the taxable quarters ended 31 March 1980, 30 June 1980 and 30 September 1980. Notice of Tax Assessment for the additional franchise tax due for taxable quarters ending 31 March, 30 June and 30 September 1980 was forwarded to Carolina on 27 January 1981. Carolina objected to the assessment and pursuant to G.S. 105-241.1 filed a formal application for a hearing before the Secretary on 20 February 1981. The hearing was held on 25 May 1982 and on 1 March 1983 the Secretary affirmed the assessment against Carolina.

Pursuant to G.S. 105-241.2(a)(2) Carolina timely petitioned to the Tax Review Board for an administrative review of the Secretary's decision. The Tax Review Board held its hearing on 9 November 1983 and reversed the Secretary's decision. Pursuant to the provisions of Article 4, Chapter 150A of the General Statutes, the Secretary filed his petition for judicial review on 28 December 1983. The matter was heard in Superior Court, Wake County on 20 August 1985. Judge Bailey affirmed the decision of the Tax Review Board in its entirety, finding that the substantial rights of the Secretary as set forth in G.S. 150A-51 had not been prejudiced. The Secretary (petitioner) appealed.

*Attorney General Thornburg by Special Deputy Attorney General Myron C. Banks, for the petitioner-appellant.*

*Dwight W. Allen, Vice President, Secretary and General Counsel, Carolina Telephone and Telegraph Company and Taylor & Brinson by Herbert H. Taylor, Jr., for respondent-appellee.*

EAGLES, Judge.

The sole question presented for review is whether the revenues received by Carolina from the sale of advertisements to appear in the "yellow page" classified directory are includable as "gross receipts" of a telephone company for franchise tax pur-

poses as defined in G.S. 105-120. We find that they are not and accordingly affirm.

G.S. 105-120(b) imposes an annual franchise tax, payable quarterly, on the "gross receipts" of a telephone company. A telephone company is "[e]very person, firm, or corporation, domestic or foreign, owning and/or operating a telephone business for the transmission of messages and/or conversations to, from, through, in or across this State." G.S. 105-120(a). "Gross receipts" are defined in subsection (b): "Such gross receipts shall include all rentals, other similar charges, and all tolls received from business which both originates and terminates in the State of North Carolina." This definitional portion of the statute determines this appeal. Our decision turns on the legislative intent and meaning of the phrase "rentals, other similar charges, and all tolls received from business."

In construing G.S. 105-120(b) we are guided by two general legal principles. First, we must determine the connotation which the legislature attached to the words used to define "gross receipts," construing the statute as the legislature intended it to be understood when it was enacted. *Cab Co. v. Charlotte,* 234 N.C. 572, 68 S.E. 2d 433 (1951). Second, we must construe tax statutes strictly, resolving ambiguities against the State and in favor of the taxpayer. *Watson Industries v. Shaw, Comr. of Revenue,* 235 N.C. 203, 69 S.E. 2d 505 (1950).

The statute declares that gross receipts shall include rentals, other similar charges and all tolls received from business. In the only North Carolina case interpreting the statutory definition of "gross receipts," *Telephone Co. v. Clayton, Comr. of Revenue,* 266 N.C. 687, 147 S.E. 2d 195 (1966), our Supreme Court held that telephone pole rentals charged by Southern Bell to electric power companies and other users of its poles were not the type of "rentals" contemplated in the statutory definition of "gross receipts." *Id.* at 692, 147 S.E. 2d at 198. Therefore, the Commissioner of Revenue could not include those rentals in computing Southern Bell's franchise tax base. *Id.* The Court determined that "rentals" meant rentals paid by customers for the use of telephone, i.e. local exchange rentals. *Id.* at 691, 147 S.E. 2d at 197. In its analysis of the statute, the *Clayton* court came to the following conclusions:

(1) At the time G.S. 105-120(a) and (b) was enacted in 1939, the word rental referred to the rental of the telephone itself. Charges similar to "rentals" were "monthly charges for special equipment such as outdoor sets, hand telephones, and extra lengths of cord for desk sets . . . colored sets, 'push-button dialing,' amplifiers and other accouterments." *Id.* at 690-91, 147 S.E. 2d at 197.

(2) The General Assembly used the word "include" to mean "shall consist of" so as to not broaden the tax base but exclude interstate tolls from the tax base. *Id.* at 691, 147 S.E. 2d at 197.

(3) If the General Assembly had intended to tax telephone companies' revenues from sources other than those services which telephone companies are obligated to furnish to the public, then the General Assembly would have specifically written the statute to include all receipts from any source whatsoever, excepting those expressly exempted. *Id.* at 691, 147 S.E. 2d at 198.

Following the analysis used by the *Clayton* court, we conclude that revenues received from the sale of advertisements displayed in the "yellow page" classified directory are not includable in Carolina's franchise tax base. These receipts clearly do not represent "rentals" or "tolls received from business." "Rentals" are the amounts paid by telephone customers for local exchange rentals. 266 N.C. at 691, 147 S.E. 2d at 197. "Tolls received from business" are the revenues received by Carolina from the telephone company business. A toll is defined as a sum of money paid for the use of something. Black's Law Dictionary 1334 (rev. 5th ed. 1979). Telephone "business" is defined in G.S. 105-120(a) as "the transmission of messages and/or conversations to, from, through, in or across this State." Therefore, "tolls received from business" are the charges paid to Carolina by its customers for the privilege of using Carolina's message transmission and communication equipment. This definition encompasses the transmission of messages and conversations but does not include revenues received from the sale of "yellow page" advertisements.

"Gross receipts" also include "other similar charges." This phrase appears in sequence immediately after the term "rentals": "gross receipts shall include all rentals, other similar charges. . . ." While the Court in *Clayton, supra*, did not specifically define

"other similar charges," the Court alluded to a definition by stating: "Charges similar to these rentals . . . were monthly charges for special equipment such as outdoor sets, hand telephones, and extra lengths of cord for desk sets. Today extra charges are made for colored sets, 'push-button dialing,' amplifiers and other accouterments." 266 N.C. at 690-91, 147 S.E. 2d at 197. In determining what is meant by the phrase "other similar charges" we are guided by the *ejusdem generis* rule of statutory construction, "where general words follow a designation of particular subjects or things, the meaning of the general words will ordinarily be presumed to be, and construed as, restricted by the particular designations and as including only things of the same kind, character and nature as those specifically enumerated." *State v. Lee*, 277 N.C. 242, 244, 176 S.E. 2d 772, 774 (1970) (quoting *State v. Fenner*, 263 N.C. 694, 140 S.E. 2d 349 (1965). Applying this rule we find that the phrase "other similar charges" means charges of the same kind and character as rentals, for example, the type of charges listed by the Supreme Court in *Clayton*. Revenues from the sale of advertisements to appear in the "yellow page" classified directory do not fall within this description. They are not rentals, defined by the Court in *Clayton* to be local exchange rentals and they are not of like kind, character and nature.

Accordingly, we hold that the General Assembly did not intend to include as "gross receipts" revenues attributable to the sale of advertisements displayed in the "yellow page" classified directory.

We note that the legislative history of the franchise tax statute supports our holding. As early as 1911, a specific tax was levied on telephone companies although not on a gross receipts basis. N.C. Public Laws 1911, ch. 50 Section 49. By 1913, the tax was levied on "gross receipts" from all sources. There was no limitation specifying the scope or content of the receipts. N.C. Public Laws 1913, ch. 201 Section 81. In 1925 it was first provided that "gross receipts shall include all tolls received from business which both originates and terminates in the State of North Carolina . . . ," evincing a legislative intent to restrict the tax to gross receipts arising only from the telephone business. N.C. Public Laws 1925, ch. 101 Section 88. In 1929, the tax was first denominated a "franchise tax" and in that year assumed the

general form it now takes. N.C. Public Laws 1929, ch. 345 Sections 201, 207. The "gross receipts" tax began as a tax on gross receipts from all sources. It was later limited to a tax on receipts from the telephone business. Subsequently it was specifically defined as a tax on "rentals, other similar charges, and tolls received from business." G.S. 105-120(b).

We note too that the legislative policy behind franchise tax statutes generally supports our holding.

> Franchise taxes are imposed for the privilege of engaging in business in this State. G.S. 105-114. The amount of the tax varies with "the nature and magnitude of the privilege taxed, the relative financial returns to be expected of the business or activities under franchise, and the burden put on government in regulating, protecting and fostering the enterprise. . . ."

*Clayton, supra,* 266 N.C. at 690, 147 S.E. 2d at 197 (quoting *Power Co. v. Bowles,* 229 N.C. 143, 147, 48 S.E. 2d 287, 290 (1948) ). The annual franchise tax on telephone companies, G.S. 105-120(a), by its terms applies to "[e]very person, firm, or corporation . . . owning and/or operating a telephone business for the transmission of messages and/or conversations" and is imposed "for the privilege of engaging in such business." G.S. 105-120(b). The telephone business is regulated by the North Carolina Utilities Commission pursuant to Chapter 62 of the General Statutes. G.S. 62-110 grants to a telephone company a monopoly on the rendering of telephone service within its service area. *State ex rel. Utilities Comm. v. Merchandising Corp.,* 288 N.C. 715, 220 S.E. 2d 304 (1975). "Nothing in Ch. 62 of the General Statutes, however, confers upon a telephone company a monopoly upon advertising by its business subscribers." *Id.* at 725, 220 S.E. 2d at 310.

Though we resolve the issue before us on the basis of principles of statutory construction, two opinions by our Supreme Court, each relied on by one of the parties, warrant discussion here. Appellant urges that *State ex rel. Utilities Comm. v. Southern Bell,* 307 N.C. 541, 299 S.E. 2d 763 (1983) (*Southern Bell*) requires reversal of the Superior Court's order. Appellee contends that *Gas House, Inc. v. Southern Bell Telephone Co.,* 289 N.C. 175, 221 S.E. 2d 499 (1976) (*Gas House*) supports the trial court's position.

*Southern Bell, supra,* was a ratemaking case in which the Court held that the Utilities Commission could consider the expenses, revenues and investments related to directory advertisements in its ratemaking proceedings. 307 N.C. at 547, 299 S.E. 2d at 767. The Utilities Commission found as fact that "[t]he classified directory in which advertising appears, is an *integral part* of providing adequate telephone service." *Id.* at 546; 299 S.E. 2d at 766. The Supreme Court held that there was sufficient evidence to support this finding of fact. *Id.*

*Gas House, supra,* concerned the validity of an exculpatory clause in a contract for the publication of an advertisement within the "yellow page" classified directory. The Supreme Court opinion noted that, "[t]he business of carrying advertisements in the yellow pages of its directory is not part of a telephone company's public utility business." 289 N.C. at 184, 221 S.E. 2d at 505. In *Southern Bell, supra,* the Court's majority opinion distinguished *Gas House* and specifically stated that the above-quoted language from *Gas House* was *obiter dictum* and not inconsistent with the result reached by the Court in *Southern Bell,* but that "[t]o the extent that the language in *Gas House* is inconsistent with our holding in the case *sub judice* that language is overruled." 307 N.C. at 547, 299 S.E. 2d at 766. Appellant here does not argue that *Southern Bell* overruled the quoted language from *Gas House* but merely refers to Justice Exum's dissent in *Southern Bell* disagreeing with the majority's designation of the *Gas House* language as *obiter dictum* and stating that by overruling the language in *Gas House* the Court, in effect, overruled the entire decision. 307 N.C. at 551, 299 S.E. 2d at 768-69 (Exum, J., dissenting in part and concurring in part).

We have carefully reviewed the opinions in *Gas House* and *Southern Bell* and conclude that they are not inconsistent and may be read together. As we read it, *Gas House* holds that the business of *carrying advertisements* in the yellow pages is not part of a telephone company's public utility business. *Southern Bell* holds that the *classified directory* in which advertising appears, is an integral part of the public utility's function of providing adequate service to citizens of North Carolina. We read *Southern Bell* strictly to mean that, for ratemaking purposes, it is the furnishing of the classified directory which is integral to providing reasonable, adequate telephone service and not the addi-

tional advertisements that appear in the classified directory. In *Southern Bell* the distinction is recognized: "This language [in *Gas House*] does not gò so far as to say that the furnishing of a *classified listing of subscribers*, like that found in the yellow pages, to its customers is not an integral part of the public utility's function of providing adequate telephone service to the citizens of North Carolina." [Emphasis added.] 307 N.C. at 547, 299 S.E. 2d at 766.

While we can reconcile the language of *Gas House* with the holding in *Southern Bell*, neither opinion directly addresses the issue of what constitutes Carolina's franchise tax base. Our decision here does not conflict with the policy expressed and the result reached by the Court in *Southern Bell*. The inclusion for ratemaking purposes of revenues from yellow page advertisements does not require that the revenues also be included in the public utility's franchise tax base. We note that while telephone pole rentals are included for ratemaking purposes, they too are excluded from the franchise tax base, *Clayton, supra.*

For the reasons stated, we affirm the trial court's order affirming the Tax Review Board.

Affirmed.

Judges ARNOLD and PARKER concur.