STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION, INTERVENOR-APPELLEE; PUBLIC STAFF OF NORTH CAROLINA UTILITIES COMMISSION, INTERVENOR-APPELLEE; ATTORNEY GENERAL LACY H. THORNBURG, INTERVENOR-APPELLEE, AND THE BOULEVARD FLORIST, INC., COMPLAINANT v. SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, RESPONDENT, AND BELLSOUTH ADVERTISING & PUBLISHING CORPORATION, RESPONDENT-APPELLANT

No. 8810UC496

(Filed 4 April 1989)

1. Telecommunications § 1— publisher of telephone directory and Yellow Pages—no jurisdiction of Utilities Commission

The Utilities Commission had no jurisdiction over the publisher of a telephone directory and Yellow Pages (1) pursuant to N.C.G.S. § 62-94(b)(2), since the publisher was not a public utility; (2) pursuant to N.C.G.S. § 62-51, which authorizes the Commission to inspect the books and records of corporations affiliated with public utilities, since that statute is not applicable to nonratemaking actions such as this one, and, even if it were applicable, the Commission would not be given jurisdiction over the publisher but would only be empowered to sanction the affiliated public utility; (3) on the theory that the publisher was the agent of the utility, since there was no evidence to support a finding of agency, and, even if a principal/agent relationship were properly found to exist, it would merely mean that any wrongs by the publisher could be imputed to the utility, not that the Commission would have jurisdiction over the publisher; and (4) on the theory that the publisher was the alter ego of the utility, since the utility did not attempt to evade its duty by treating the publisher as a separate entity but instead accepted its responsibility to make complainant whole.

2. Telecommunications § 1— Yellow Pages publisher—no jurisdiction of Utilities Commission

The publishing of Yellow Pages advertisements by an unregulated private entity is an unregulated activity, and the

STATE EX REL. UTILITIES COMM. v. SOUTHERN BELL

[93 N.C. App. 260 (1989)]

Utilities Commission therefore had no jurisdiction over a complaint regarding service to a Yellow Pages customer.

**3. Utilities Commission § 52— administrative remedies not exhausted—futile effort—judicial review proper**

Defendant publisher of Yellow Pages was not required to exhaust all administrative remedies as a prerequisite to seeking judicial review of the Utilities Commission's decision, since the Commission had repeatedly ruled against defendant on the sole issue which it appealed to the Court of Appeals, namely, the Commission's jurisdiction over it, and pursuing a further hearing before the agency would have been a futile gesture for defendant.

Judge WELLS concurring in the result.

THIS is an appeal by respondent-appellant Bellsouth Advertising & Publishing Corporation from a 20 December 1987 order of the Utilities Commission in which the Commission asserted jurisdiction over respondent-appellant and ordered it to pay damages to complainant Boulevard Florist, Inc. in the form of a three-month billing credit. Heard in the Court of Appeals 9 January 1989.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Lorinzo L. Joyner, for intervenor-appellee.*

*Executive Director Robert P. Gruber and Chief Counsel Antionette R. Wike, by Staff Attorney A. W. Turner, Jr., for intervenor-appellee Public Staff of North Carolina Utilities Commission.*

*Petree Stockton & Robinson, by John T. Allred, L. Elizabeth Henry and Richard E. Fay, for respondent-appellant Bellsouth Advertising and Publishing Corporation.*

JOHNSON, Judge.

Respondent-appellant Bellsouth Advertising and Publishing Corporation (BAPCO) brings this appeal from a 20 December 1987 order of the North Carolina Utilities Commission (Commission) directing respondent Southern Bell Telephone and Telegraph Company (Southern Bell) to grant complainant Boulevard Florist, Inc. (Boulevard) a three-month billing credit in the amount of $450.72 for local telephone service and also directing both Southern Bell and BAPCO to grant complainant a three-month billing adjustment for advertising charges for the 1985 Yellow Pages advertisement

STATE EX REL. UTILITIES COMM. v. SOUTHERN BELL

[93 N.C. App. 260 (1989)]

placed by Boulevard in the Charlotte telephone directory. These credits were awarded to compensate Boulevard for the malfunctioning of a telephone intercept service which was to operate in conjunction with Boulevard's Yellow Pages advertisement.

In answer to the complaint, BAPCO filed a letter termed a "special appearance/response" in which it moved to dismiss the complaint on the grounds that BAPCO is not subject to the Commission's jurisdiction. The motion was denied over the dissent of one Commissioner. After an evidentiary hearing on the merits of Boulevard's complaint, Hearing Examiner Robert H. Bennink, Jr. issued a "Recommended Order Granting Complaint in Part" on 1 December 1987. Neither Southern Bell nor BAPCO appealed the order to the full Commission. Therefore, the recommended order became a final order on 20 December 1987. On 19 January 1988, BAPCO filed notice of appeal from the order to this Court, contending, *inter alia*, that the order is void because the Utilities Commission lacks jurisdiction over BAPCO. Southern Bell did not appeal.

Complainant Boulevard is a North Carolina corporation doing business as a florist in Charlotte. BAPCO and Southern Bell are both wholly-owned subsidiaries of Bellsouth Corporation. Southern Bell, which is a public utility, holds a franchise to provide telephone service in and around the Charlotte area and in other areas of North Carolina. Since 1 January 1984, BAPCO has published the Charlotte telephone directory and has sold Yellow Pages advertisements for that publication. Prior to 1984, Southern Bell published the Charlotte directory and sold Yellow Pages advertisements.

Boulevard contracted with BAPCO to place an advertisement in the Yellow Pages section of the 1985 Charlotte telephone directory. During negotiations, Boulevard's president, Michael Milton, explained to BAPCO's representatives that shortly after distribution of the 1985 directory, his business would be moving to a new address in the Charlotte area. This move would necessitate Boulevard's getting a new telephone number.

Mr. Milton agreed to have his future address and telephone number published in his Yellow Pages advertisement on assurance that intercept equipment would be installed to direct callers to Boulevard's old number until its move was complete. The advertisement was published accurately and intercept equipment installed by Southern Bell. As it happened, Boulevard did not move to its

new location until 3 March 1986 because of delays in the construction of its new building.

Boulevard alleged in its complaint that from July 1985, when the 1985 directory became effective, through February 1986, that the intercept equipment installed to provide Boulevard's present telephone number frequently did not function properly so that potential customers were unable to reach the business by telephone. Boulevard alleged a substantial loss of business because of the malfunction. On various occasions the company reported problems with the intercept system to both BAPCO and Southern Bell. When BAPCO was contacted it notified the repair department of Southern Bell to correct the problem. In May 1986, after repeated problems, Boulevard filed a complaint with the Commission, alleging that the faulty recording transfer system constituted inadequate telephone service and inadequate Yellow Pages advertising.

By this appeal, BAPCO raises two Assignments of Error for our review. First, BAPCO contends it is not a public utility, and therefore the Commission has no jurisdiction in this matter. Second, it argues that even if BAPCO were a public utility, the Commission has no jurisdiction to entertain a complaint concerning Yellow Pages advertising because such advertising is not a regulated activity.

Before addressing these questions, we note that the scope of our review of a decision of the Utilities Commission is governed by G.S. sec. 62-94. The statute provides, in pertinent part, the following:

[The reviewing court] may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:

(1) In violation of constitutional provisions, or

(2) In excess of statutory authority or jurisdiction of the Commission, or

(3) Made upon unlawful proceedings, or

(4) Affected by other errors of law, or

(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted, or

(6) Arbitrary or capricious.

G.S. sec. 62-94(b).

[1]   Turning to the question of the Commission's jurisdiction pursuant to G.S. sec. 62-94(b)(2), we observe that the Utilities Commission is a creature of the legislature and may exercise jurisdiction and regulatory authority only as defined by Chapter 62 of the General Statutes. *Utilities Commission v. Merchandising Corp.*, 288 N.C. 715, 220 S.E. 2d 304 (1975). Specifically, G.S. sec. 62-73 (along with G.S. sec. 62-74 which is not applicable here) governs the Commission's jurisdiction with regard to complaints: "Complaints may be made by the Commission on its own motion or by any person having an interest, . . . setting forth any act or thing done or omitted to be done by any *public utility*, . . ." (emphasis added). Thus, the Commission's jurisdiction in complaint proceedings is limited to complaints against public utilities.

"Public utility" is defined in G.S. sec. 62-3(23)(a) as "a person . . . [c]onveying or transmitting messages or communications by telephone or telegraph, or any other means of transmission, where such service is offered to the public for compensation." Also, "[n]either the Commission nor this Court has authority to add to the types of business defined by the Legislature as public utilities." *Utilities Commission v. Telegraph Co.*, 267 N.C. 257, 268, 148 S.E. 2d 100, 109 (1966).

Further, G.S. sec. 62-51, which authorizes the Commission "to inspect the books and records of corporations affiliated with public utilities" cannot give the Commission jurisdiction over BAPCO. That statute grants broad power to the Commission to inspect the books and records of affiliated companies in ratemaking disputes. *Utilities Commission v. Intervenor Residents*, 305 N.C. 62, 286 S.E. 2d 770 (1982). However, G.S. sec. 62-51 is not applicable to a nonratemaking action such as this which involves a complaint between private parties. *Id.* Even if the provision were applicable, its effect would not be to confer jurisdiction on the Commission concerning BAPCO. Rather, the Commission would be empowered to sanction the affiliated public utility Southern Bell if BAPCO did not cooperate in allowing inspection of its books and records.

We also do not believe that the Commission has jurisdiction over BAPCO on the theories that BAPCO is either the agent or alter ego of Southern Bell. In order for a principal/agent relationship to exist, Southern Bell, as principal, would have to exert control over BAPCO. *Vaughn v. Dept. of Human Resources*, 296 N.C. 683, 252 S.E. 2d 792 (1979). In examining the record, we do not

find the control necessary for the relationship. The fact that BAP-CO relayed Boulevard's service complaints to Southern Bell appears to us to be a customer courtesy, rather than acts sufficient to create a principal/agent relationship. The Commission concluded in its findings of fact numbered seven, twenty-four and twenty-five that BAPCO assumed responsibility, under express or implied authority, to act as Southern Bell's agent or alter ego concerning certain of its duties pursuant to its tariffs, including handling service problems. Our examination of the record does not disclose substantial, competent evidence to support these findings. Therefore, they are overruled. Assuming that a principal/agent relationship were properly found to exist, it would merely mean that any wrongs by BAPCO could be imputed to Southern Bell. It would not confer jurisdiction to the Commission over BAPCO.

We also disagree that the situation before us merits treating BAPCO as the alter ego of Southern Bell. We recognize that it may often be necessary to "pierce the corporate veil" in order to ascertain the actual scope of a public utility enterprise so that the utility cannot evade its responsibilities to the public. *Utilities Commission v. Morgan, Attorney General*, 277 N.C. 255, 177 S.E. 2d 405 (1970), *affirmed on reh.*, 278 N.C. 235, 179 S.E. 2d 419 (1971). Here, however, we do not find that Southern Bell will at all evade its duty to the complainant because BAPCO is treated as a separate entity. Southern Bell has accepted its responsibility to make the complainant whole, and, indeed, does not appeal the judgment. Moreover, Boulevard's complaint really only involved faulty service, rather than error in the advertisement published by BAPCO.

We conclude that the Commission does not have jurisdiction over BAPCO as a public utility, and we do not find the existence of equitable principles which would justify disregarding BAPCO's status as a corporate entity separate from Southern Bell.

[2] Intervenor-appellees also contend that Yellow Pages advertisements are part of the service provided by telephone companies, and that as such this operation is subject to oversight by the Commission, even though the function has been delegated to a separate corporate entity. BAPCO counters by arguing that Yellow Pages advertising is not a regulated activity, and that, therefore, even if it were found to be a public utility (which we hold that it is not), it would not be subject to regulation in this instance.

It points to G.S. sec. 62-3(23)(d) which states in part: "If any person conducting a public utility shall also conduct any enterprise not a public utility, such enterprise is not subject to the provisions of this Chapter."

We recognize that in the past there has been some apparent conflict between two opinions of our Supreme Court, *Gas House, Inc. v. Southern Bell Telephone Co.*, 289 N.C. 175, 221 S.E. 2d 499 (1976) and *State ex rel. Utilities Commission v. Southern Bell*, 307 N.C. 541, 299 S.E. 2d 763 (1983), concerning the extent to which Yellow Pages advertisements in the classified directory are part of a public utility's function. However, we agree with the reasoning of this Court in *In re Proposed Assessment v. Carolina Telephone*, 81 N.C. App. 240, 344 S.E. 2d 46, *disc. rev. denied*, 318 N.C. 283, 347 S.E. 2d 465 (1986), that *Gas House* and *Southern Bell* are not inconsistent and may be read together.

In *Gas House, supra,* the Supreme Court upheld the validity of a limitation of liability provision in a contract for the publication of a Yellow Pages advertisement over the plaintiff's contention that the provision was contrary to public policy by allowing a public utility to avoid the consequences of its own negligence. In so holding, the Court stated that "[t]he business of carrying advertisements in the yellow pages of its directory is not part of a telephone company's public utility business." *Id.* at 184, 221 S.E. 2d at 505.

Seven years later in *Southern Bell, supra,* a ratemaking case, the Court held that the Utilities Commission could include investments, costs, and revenues related to directory advertising in ratemaking proceedings. 307 N.C. at 547, 299 S.E. 2d at 767.

The Court noted that

the yellow pages have never been and are not now regulated by the Utilities Commission. However, the fact that a specific activity of a utility is not regulated does not mean that the expenses and revenues from that activity cannot be included in determining the rate structure of the utility.

307 N.C. at 544, 299 S.E. 2d at 765.

The Court went on to say that the statement of *Gas House* quoted above, which it termed *obiter dictum*, was overruled only to the extent that it, and any other language in the opinion, is

STATE ex rel. UTILITIES COMM. v. SOUTHERN BELL

[93 N.C. App. 260 (1989)]

inconsistent with the holding in *Southern Bell. Id.* at 547, 299 S.E. 2d at 766.

*In re Proposed Assessment v. Carolina Telephone, supra,* although decided on principles of statutory construction not relevant here, attempted to reconcile the language of *Gas House* with the holding in *Southern Bell. Proposed Assessment* made the following analysis:

> As we read it, *Gas House* holds that the business of *carrying advertisements* in the yellow pages is not part of a telephone company's public utility business. *Southern Bell* holds that the *classified directory* in which advertising appears, is an integral part of the public utility's function of providing adequate service to citizens of North Carolina. We read *Southern Bell* strictly to mean that, for ratemaking purposes, it is the furnishing of the classified directory which is integral to providing reasonable, adequate telephone service and not the additional advertisements that appear in the classified directory. In *Southern Bell* the distinction is recognized: "This language [in *Gas House*] does not go so far as to say that the furnishing of a *classified listing of subscribers,* like that found in the yellow pages, to its customers is not an integral part of the public utility's function of providing adequate telephone service to the citizens of North Carolina." [Emphasis added.] 307 N.C. at 547, 299 S.E. 2d at 766.

81 N.C. App at 246-47, 344 S.E. 2d at 50-51 (emphasis in original).

We agree with this analysis that the publishing of Yellow Pages advertisements is an unregulated activity when conducted, as in *Proposed Assessment,* by a regulated public utility. Carrying this to its logical conclusion, we must conclude that the publishing of Yellow Pages advertisements by an unregulated private entity, such as BAPCO, is also an unregulated activity.

[3] Finally, we turn to intervenor-appellee Public Staff's contention that we should not hear this appeal because BAPCO failed to exhaust its administrative remedies in the Utilities Commission. They point out that BAPCO did not appeal the recommended order of the hearing examiner to the full Commission, thereby allowing it to become final nineteen days later. Under the particular facts of this case, we find this argument to be without merit.

On 22 December 1986, the full Commission issued an order denying BAPCO's motion to dismiss for lack of jurisdiction. Then on 29 May 1987, in an order enjoining BAPCO from requiring Boulevard to pay for its 1987 Yellow Pages advertisement in advance, the Commission again formally asserted its jurisdiction over BAPCO. Appeals of both these orders asserting jurisdiction were dismissed by this Court as interlocutory. The 1 December 1987 recommended order became final on 20 December without exception by BAPCO or modification made by the Commission on its own initiative.

It is well established that generally a party must exhaust all administrative remedies as a prerequisite to seeking judicial review of an agency's decision. G.S. sec. 150B-43; *Presnell v. Pell*, 298 N.C. 715, 260 S.E. 2d 611 (1979); *Davis v. Dept. of Transportation*, 39 N.C. App. 190, 250 S.E. 2d 64 (1978), *disc. rev. denied*, 296 N.C. 735, 254 S.E. 2d 177 (1979) (both decided when former G.S. sec. 150A-43 was in force). However, this rule should not be inflexibly applied in the rare case in which exhaustion would for some reason prove inadequate or futile. *Cafferello v. U.S. Civil Service Commission*, 625 F. 2d 285 (9th Cir. 1980); *Givens v. Poe*, 346 F. Supp. 202 (W.D.N.C. 1972); *Orange County v. Dept. of Transportation*, 46 N.C. App. 350, 265 S.E. 2d 890 (1980); *Stocks v. Thompson*, 1 N.C. App. 201, 161 S.E. 2d 149 (1968). We believe this is just such a case. The Commission had already repeatedly ruled on the sole issue appealed by BAPCO to this Court, namely, the Commission's jurisdiction over it. Pursuing a further hearing before the agency would have been a futile gesture for BAPCO.

For all the foregoing reasons, we hold that this appeal was properly brought before this Court, and that the Utilities Commission erred in asserting its jurisdiction over BAPCO in this case. The 20 December 1987 order of the North Carolina Utilities Commission is affirmed as to Southern Bell Telephone and Telegraph Company in all respects and is vacated as to BAPCO.

Affirmed in part and reversed in part.

Judge BECTON concurs.

Judge WELLS concurs in the result.

Judge WELLS concurring in the result.

The "Yellow Pages" of Southern Bell's telephone directories are an integral part of its providing telephone service to the public. The Yellow Pages are a convenient and helpful service to telephone customers, without which those customers would have to resort to wasteful, time-consuming searches for important information on countless sources of a huge variety of services needed by telephone customers.

Additionally, Southern Bell, by its own activities, holds itself out to the public as being the provider of its Yellow Pages. In the Yellow Pages themselves, one finds prominent and frequent references to "The Southern Bell Yellow Pages," such references clearly intended to both attract advertisers and to increase telephone subscriber's reliance on the Yellow Pages.

I find the "separateness" of Southern Bell and BAPCO to be illusory. It is more reasonable to assume that BAPCO is a mere business device by or through which Southern Bell has its Yellow Pages processed and printed, and that BAPCO is therefore the agent or the alter ego of Southern Bell in its Yellow Pages role.

I believe, however, that the majority has reasonably used applicable North Carolina case law precedents to reach the result of holding that BAPCO is not subject to commission regulation, and I therefore concur in the result.